UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRANDOWN DANIEL BECERRA ANDRADE,

Petitioner,

v.

WARDEN, GOLDEN STATE ANNEX FACILITY, et al.,

Respondents.

No.  1:26-cv-00875 DJC AC

FINDINGS & RECOMMENDATIONS

Petitioner, an immigration detainee proceeding through counsel, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE").  ECF No. 14.  He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment.  After denying petitioner's earlier motion for a temporary restraining order because, at that early stage of proceedings, petitioner had not met his burden of showing a likelihood of success on the merits, District Judge Calabretta referred this matter to the undersigned pursuant to Local Rule 302(c)(17).  ECF No. 9.

Because petitioner's detention pursuant to section 1226(c)(1)(A) of approximately one year is no longer within the constitutionally permissible period contemplated by the Supreme Court in Demore v. Kim, 538 U.S. 510 (2003), the undersigned recommends the petition be

1

GRANTED and respondents be directed to provide petitioner a bond hearing before an immigration judge.

I.     Factual Background

Petitioner is a native and citizen of Mexico.  His parents brought him to the United States in January 1997 when he was three years old, and he resided in California since that time.  ECF No. 14 at 6; ECF No. 8, Ex. 1 at 3.  Petitioner graduated from high school at Mojave River Academy in the Cathedral City area in 2014.  He was granted Deferred Action for Childhood Arrivals ("DACA") status on March 4, 2015, which expired on March 3, 2017.[1]  Id.

According to records provided by respondent, petitioner has three prior felony convictions stemming from two criminal cases (Case Nos. INF 1901984 and INF 2001719) in the Riverside County Superior Court.  ECF No. 8, Exs. 1-7; ECF No. 8, Ex. 8 (Jaimes Decl.) at ¶¶ 8-9; ECF No. 14 at 6.  Petitioner pled guilty to (1) possession for sale of a narcotic controlled substance (cocaine) in violation of California Health and Safety Code § 11351; (2) possession for sale of a short-barreled shotgun in violation of California Penal Code § 33215; and (3) unlawful possession of an assault weapon in violation of California Penal Code § 30600(A).  ECF No. 8, Exs. 1-7; ECF No. 8, Ex. 8 (Jaimes Decl.) at ¶¶ 8-9.  In June 2021, Petitioner was sentenced to 44 months incarceration.  ECF No. 8, Ex. 1 at 3; Ex. 2 at 7.  After serving four and a half months, petitioner was released from custody early based on a federal order in both cases on November 1, 2021, with no supervision to follow.  ECF No. 14 at 7; ECF No. 8 at 62, Exs. 2-4.

It is undisputed that petitioner's cocaine conviction constitutes an aggravated felony drug trafficking conviction under § 101(a)(43)(B) of the Immigration and Nationality Act ("INA").  ECF No. 8, Ex. 8 (Jaimes Decl.) at ¶ 9; ECF No. 14 at 7.[2]  On August 4, 2022, ICE arrested

---

[1] On December 31, 2025, a new DACA application as well as employment authorization request under I-765 filed on behalf of petitioner.  ECF No. 14, Ex. 7.

[2] Petitioner argues his past criminal convictions will be vacated, based on his January 21, 2026 motion to vacate his criminal convictions in INF 2001719 and INF 1901984 pursuant to California Penal Code § 1473.7(a)(1).  ECF No. 14, Ex. 2-3.  However, neither party provides evidence that petitioner's past convictions have, in fact, been vacated and the state court docket indicates petitioner's motion to vacate was later dismissed.  Accordingly, the court presumes that petitioner's past convictions, including his aggravated drug conviction, stand.

petitioner at his residence to process him for administrative removal due to his drug conviction. ECF No. 8, Exs. 1-3.  He was detained at the Desert View Annex until August 15, 2022, when he was released from custody and placed on an order of supervision with enrollment in the Alternative to Detention ("ATD") program due to his COVID-19 risk factors (body mass index) at the time.  Id.; ECF No. 8, Ex. 8 (Jaimes Decl.) at ¶ 11.  His conditions of release under ATD included an ankle monitor for location monitoring, physical check-ins, and bi-weekly video calls. ECF No. 8, Ex. 6 at 6.  On April 30, 2024, ICE initiated removal proceedings by issuing a Form-I-862 Notice to Appear alleging petitioner was an alien present in the United States who has not been admitted or paroled and is therefore inadmissible pursuant to INA § 212(a)(6)(A)(i).  ECF No. 8, Ex. 5.

Petitioner was subsequently arrested on March 28, 2025, for transporting an alien unlawfully present in the United States, resulting in his termination from the ATD program.  Id., Exs. 2, 6.  A federal criminal complaint was filed in the U.S. District Court for the Southern District of California on March 31, 2025, charging petitioner under 8 U.S.C. § 1324 with alien smuggling in Case No. 3:25-cr-01368-AGS, although he was released on bond on April 3, 2025, while his criminal case was pending.  Id., Ex. 7.  The criminal charges against petitioner were subsequently dismissed by the United States on September 5, 2025, due to a lack of sufficient evidence.  Id., Ex. 7.

On June 18, 2025, Border Patrol arrested petitioner after requesting that he come retrieve personal property taken during his March 2025 arrest.  ECF No. 6, Ex. 8 at 5; ECF No. 14 at 8. After the alien smuggling criminal charges were dismissed in September 2025, ICE did not conduct a custody redetermination.  On September 9, 2025, petitioner was held in immigration custody pursuant to INA § 236(c) and INA § 235(b) at Otay Mesa Detention Center due to his drug trafficking conviction.  ECF No. 8, Ex. 8 (Jaimes Decl.).  On September 20, 2025, he was transferred to the Golden State Annex detention center in McFarland, California, where he is currently detained.  ECF No. 14 at 3; ECF No. 8, Ex. 8.

II.     Procedural History

Proceeding pro se, petitioner filed a petition for writ of habeas corpus in February 2026.

3

ECF No. 1.  District Judge Calabretta, construing petitioner's habeas petition as also including a motion for temporary restraining order, directed respondent to file an opposition.  ECF No. 6.

Respondents opposed petitioner's request for habeas relief and a temporary restraining order, arguing that petitioner is an "applicant for admission" subject to mandatory detention by ICE under 8 U.S.C. § 1225(b)(2) because his prior release from custody in ICE's discretion does not have the effect of converting his presence in the United States into an "admission."  ECF No. 8 at 2.  As an applicant for admission, respondent argues that petitioner is subject to mandatory detention and ineligible for a bond hearing.  Id.  In addition, respondent argues that petitioner is subject to mandatory detention based upon his aggravated drug trafficking conviction pursuant to 8 U.S.C. § 1226(c).  Id.

On February 11, 2026, based on the record submitted by respondent, Judge Calabretta found that petitioner may have a conviction constituting a violation of a state law relating to a controlled substance within the meaning of 8 U.S.C. § 1182(a)(2)(A)(i)(II), which could subject petitioner to detention under 8 U.S.C. § 1226(c)(1)(A).  ECF No. 9.  As a result, Judge Calabretta found that petitioner had not met his burden to show a likelihood of success on the merits at this early stage of the proceedings, sufficient to warrant emergency relief.  Id.  This matter was referred to the undersigned.  Id.

Given the complexity of legal issues involved, the court granted petitioner's motion for appointment of counsel.  ECF No. 10.  With assistance of counsel, petitioner's Supplemental Habeas Petition was filed on March 3, 2026, arguing that he had been unlawfully detained since June 18, 2025, without any opportunity for a neutral decisionmaker to provide a bond hearing and review whether his continued detention was lawful.  ECF No. 14 at 2.  Petitioner alleges his prolonged re-detention without a hearing violates his right to Due Process under the Fifth Amendment.  Although petitioner "is currently detained under INA § 235(b) and 8 U.S.C. § 1226(c) because of his conviction for an aggravated felony drug trafficking offense," petitioner argues "that charge . . . will be vacated."  Id.  Moreover, if and when his aggravated felony drug trafficking charge is vacated, petitioner contends 8 U.S.C. § 1226(b)(2) is inapplicable because he was already residing in the country and is therefore not an "arriving" noncitizen.  Id. at 2-3.

4

Petitioner alleges that based on his prior release from ICE custody, he has a protected liberty interest in freedom from prolonged detention, and after applying the factors in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), his continued detention without a bond hearing has become prolonged and therefore violates his procedural due process rights under the Fifth Amendment. As relief, petitioner asks the Court, *inter alia*, to order his release unless respondents schedule a hearing to take place before a neutral arbiter where the government must establish with clear and convincing evidence that petitioner presents a current risk of flight or danger, and if the government cannot meet that burden, order Petitioner's release on appropriate conditions of supervision. Id. at 3.

Respondents' opposition brief simply incorporated the arguments made in their prior submission. ECF No. 15. No traverse has been filed, and the time for doing so has passed. To date, petitioner has been detained pursuant to 8 U.S.C. § 1226(c) for twelve months without a bond hearing.

III.    Legal Standard

A.  28 U.S.C. § 2241

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)). In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

B.  Due Process in Prolonged Immigration Detention

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court

5

nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore, 538 U.S. at 531; see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

The authority to detain certain noncitizens already in the country pending the outcome of removal proceedings is found in 8 U.S.C. §§ 1226(a) and 1226(c). Here, it is undisputed that petitioner has been detained pursuant to § 1226(c), which provides:

> (1) Custody
>
> The Attorney General shall take into custody any alien who--
>
> is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title;
>
> . . .
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

This Court has previously joined other district courts in concluding that the prolonged and indefinite detention of noncitizens pursuant to statutes mandating detention without a bond hearing can violate the Due Process Clause. See Yang v. Chestnut, No. 1:26-cv-01902-DJC-EFB, 2026 WL 915018 (E.D. Cal. April 3, 2026); Keo v. Chestnut, No. 1:26-cv-01192-DJC-CSK, 2026 WL

747117 (E.D. Cal. Mar. 17, 2026); Mohammed v. Warden of Cal. City Det. Ctr., No. 1:26-cv-00118-DJC-CSK, 2026 WL 192368 (E.D. Cal. Jan. 26, 2026); K.C. v. Chestnut, No. 1:26-cv-00227-DJC-CSK, 2026 WL 412505 (E.D. Cal. Feb. 13, 2026); Abdul-Samed v. Warden of Golden State Annex Det. Facility, No. 1:25-cv-00098-SAB, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) (explaining that "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process' ") (quoting Martinez v. Clark, No. 2:18-cv-01669-RAJ, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), report and recommendation adopted, No. 2:18-cv-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019)).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas v. Davis, 533 U.S. 678 (2001) by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), but it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other grounds, 144 S. Ct. 1339 (2024). Although the Ninth Circuit has not decided that question, it has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that

7

those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018). This Court shares those doubts, and will therefore analyze whether a due process violation has resulted from the length of petitioner's detention without a bond hearing in this case.

IV.    Discussion

To determine if petitioner's due process rights have been violated by his twelve-month detention without a bond hearing, the court must answer two questions: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025).

Petitioner has a clear liberty interest in securing his freedom from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690. Petitioner was detained in June 2025 and has remained in custody for the twelve months since. ECF No. 14 at 8. Further, petitioner faces indefinitely prolonged detention while judicial review of his claims for relief from removal plays out. As petitioner has been deprived of the liberty secured by the Due Process Clause and this deprivation may continue for a protracted and indefinite period, petitioner has established his liberty interest. See Zadvydas, 533 U.S. at 690, 693. Having established that petitioner has a protected liberty interest, the court must determine what process is owed under the Constitution.

Courts in this Circuit weigh the following factors to ascertain when prolonged detention pursuant to 8 U.S.C. § 1226(c) violates the Due Process Clause:[3] "(1) the total length of detention

---

[3] In analyzing whether a due process violation has occurred, petitioner urges the court to employ the Mathews test. ECF No. 14 at 10-12. Respondent has not expressed a position on the question, apart from arguing that petitioner's detention is "mandatory." ECF No. 8 at 2. The Mathews test is formulated at a very high level of generality. Here the court will adopt the reasoning of Yang v. Chestnut, No. 1:26-cv-01902-DJC-EFB, 2026 WL 915018 (E.D. Cal. April 3, 2026), and employ the multi-factor test utilized by many other district courts in this circuit. This test is specifically tailored to the present context and is fully consistent with Mathews.

to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made [them] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal." Martinez, 2019 WL 5968089, at *7.

First, the length of detention, which is the most important factor, weighs in petitioner's favor as petitioner has been detained for over twelve months. ECF No. 14 at 8.  Detentions of similar length have been found to warrant bond hearings under the Due Process Clause. See, e.g., Yang v. Chestnut, No. 1:26-cv-01902-DJC-EFB, 2026 WL 915018 (E.D. Cal. April 3, 2026) (finding petitioner's detention of eleven months pursuant to 8 U.S.C. § 1226(c) without a bond hearing weighs in petitioner's favor); Yagoub v. LaRose, No. 3:26-cv-00914 JLS-JLB, 2026 WL 673799, at *2 (S.D. Cal. Mar. 10, 2026) (finding petitioner's detention of "nearly eight months" without a bond hearing weighed in petitioner's favor); Amado v. United States Dep't of Just., No. 3:25-cv-02687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (explaining that "[c]ourts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" and collecting cases); Lopez v. Garland, 631 F. Supp. 3d 870, 879–80 (finding fact that detention had spanned twelve months weighed in favor of granting bond hearing).

The second factor also favors petitioner.  This factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." Martinez, 2019 WL 5968089, at *9.  Petitioner's detention is likely to endure indefinitely while determinations about petitioner's removability are made and appealed. Id. (finding likely length of future detention absent judicial intervention weighed in favor of granting a bond hearing even where petitioner had already received a removal order and filed an appeal). Thus, this factor weighs in petitioner's favor. Loba L.M. v. Andrews, No. 1:25-cv-00611-JLT-SAB-HC, 2025 WL 2939178, at *6 (E.D. Cal. Oct. 16, 2025), report and recommendation adopted, No. 1:25-cv-00611-JLT-SAB, 2025 WL

9

3187577 (E.D. Cal. Nov. 14, 2025) (finding that "[a]lthough future events are difficult to predict, the Court nevertheless finds that the pending appeal before the BIA and possible remand to the immigration court for further proceedings or possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner"); Bojorge-Sequeira v. Geo Grp. Inc., No. 2:25-cv-01807-KKE-GJL, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026), report and recommendation adopted, No. 2:25-cv-01807-KKE-GJL, 2026 WL 285657 (W.D. Wash. Feb. 3, 2026) (finding this factor weighed in favor of petitioner who had appealed the Immigration Judge's decision to the BIA).

Petitioner's sentence, which was ultimately reduced by federal order to four-and-a half months, tips the third factor in his favor as well.  This factor considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made [them] removable." Martinez, 2019 WL 5968089, at *7; see also Zagal-Alcaraz, 2020 WL 1862254, at *5 (D. Or. Mar. 25, 2020) (finding "the imbalance between the length of Petitioner's] criminal sentence and his immigration detention weighs in Petitioner's favor").  Petitioner's current detention of twelve months exceeds the four-and-a-half-month sentence that he ultimately served for the conviction underpinning his 1226(c) detention.  Therefore, this factor weighs in petitioner's favor.

The fourth factor—the nature of crimes petitioner committed —weighs in the government's favor.  Petitioner pled guilty to three felonies in 2021.  Given the number of crimes petitioner has committed and the seriousness of those crimes, this factor weighs in the government's favor.  However, as petitioner's sentence for his three felony convictions were reduced to four-and-a half months and his most recent alien smuggling charge was dismissed by the United States for lack of sufficient evidence, this factor only slightly favors the government.

The fifth factor weighs in petitioner's favor.  "The more that the conditions under which the [non-citizen] is being held resemble penal confinement, the stronger [the] argument that [they are] entitled to a bond hearing."  Gomez v. ICE Field Off. Dir., No. 2:25-cv-02242-TL-TLF, 2026 WL 449536, at *5 (W.D. Wash. Jan. 27, 2026), report and recommendation adopted sub nom. Osuna Gomez v. ICE Field Off. Dir. & Facility Adm'r, No. 2:25-cv-02242-TL-TLF, 2026 WL 447409 (W.D. Wash. Feb. 17, 2026) (alterations in original).  Petitioner asserts, and respondents do not

10

dispute, that his conditions of confinement resemble penal confinement and that he is unable to receive necessary mental health counseling.  ECF Nos. 1 at 5-6.  Thus, this factor weighs strongly in petitioner's favor.

The sixth factor is neutral while the seventh favors petitioner. In assessing whether petitioners have contributed to the delay, courts distinguish between "legitimate defenses" to removal, which "cannot undermine [a petitioner's] claim that detention has become unreasonable," and "dilatory" or "bad faith" tactics to "deliberately slow the proceedings."  Martinez, 2019 WL 5968089, at *10 (collecting cases); see also Abduraimov v. Andrews, No. 1:25-cv-00843-EPG-HC, 2025 WL 2912307, at *9 (E.D. Cal. Oct. 14, 2025).  The government does not identify any steps petitioner took in bad faith to delay his removal proceedings, and petitioner's pending appeal to the BIA is a proper avenue for relief petitioner is entitled to pursue.  See Masood v. Barr, No. 19-cv-7623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2022) (observing that it "ill suits the United States to suggest that he could shorten his detention by giving up these rights [to appeal] and abandoning his asylum application").  Though petitioner points to no steps the government has taken in bad faith to delay these proceedings, "this delay is attributable to the Government."  See Martinez, 2019 WL 5968089, at *10.

Finally, the eighth factor is neutral. The court lacks sufficient information to assess the likelihood that petitioner's current removal proceedings will result in a final order of removal and, therefore, declines to do so.  See Sarr v. Scott, 765 F. Supp. 3d 1091, 1109 (W.D. Wash. 2025) (declining to speculate as to the merits of petitioner's appeal to the Ninth Circuit after the Immigration Judge and the BIA found petitioner removable).

The balance of these factors supports petitioner because four factors, including the length of petitioner's detention, weigh in petitioner's favor while one slightly favors respondents.  Having established that petitioner has a liberty interest and determined that his prolonged and indefinite detention warrants due process, the court finds petitioner is entitled to a bond hearing.

////

////

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's Supplemental Petition for Writ of Habeas Corpus (ECF No. 14) be GRANTED;

2. Respondents be ordered to provide petitioner with a constitutionally adequate bond hearing before an immigration judge at which respondent must justify petitioner's continued detention by clear and convincing evidence. In the event petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond, the immigration judge should consider petitioner's financial circumstances and alternative conditions of release.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Within **seven** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 18, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

12